UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 11-141 (RHK/JJK)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FRANK ELROY VENNES, JR.,

        Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, B. Todd Jones, United States Attorney for the District of Minnesota, and Timothy C. Rank, Kimberly A. Svendsen and Robert M. Lewis, Assistant United States Attorneys, submits this memorandum in connection with the sentencing of defendant Frank Elroy Vennes, Jr. The defendant pleaded guilty to one count of securities fraud, in violation of Title 15, United States Code, Sections 77q(a) and 77x, and one count of money laundering, in violation of Title 18, United States Code, Section 1957. The following memorandum addresses the government's position with respect to the Presentence Investigation Report ("PSR"). The government will file a memorandum in response to the defendant's objections, if any are made, as well as a memorandum setting forth the United States' position with respect to the application of the sentencing factors under 18 U.S.C. § 3553(a) in light of the defendant's sentencing arguments, in advance of the sentencing hearing.

1

A.    **The PSR**

The government agrees with the facts and conclusions of the PSR, including the applicable offense level and guidelines calculation. The defendant's total offense level is correctly calculated as 43. Defendant's guidelines range is correctly calculated to be 180 months, the statutory maximum sentence for the counts to which the defendant pleaded guilty.

B.    **Vennes's Conduct**

For almost 15 years, defendant Frank Elroy Vennes, Jr. was a primary source of funds for Tom Petters and his company, PCI. Initially, Vennes obtained money directly from individual investors to provide to Petters, but that source of funds was limited. It was only after Jim Fry, collaborating with Vennes, devised the PCI promissory note hedge fund structure that Petters's access to investors' money went from the million dollar range to the billion dollar range. And Vennes, knowing that Jim Fry was lying to investors about the safeguards that were supposedly in place to protect the Arrowhead Funds' investments, brought the same structure and the same lies to Bruce Prevost and David Harrold, whom he recruited to form the Palm Beach Funds. From 2000 through 2008, Vennes brokered every single deal between PCI and both the Arrowhead Funds and the Palm Beach Funds, knowing full well that both Arrowhead and Palm Beach investors were being lied to. And he did so because he made tens of millions of dollars for his role. Petters paid Vennes a commission based on the amount of money Vennes brought in through the Palm Beach Funds and the Arrowhead Funds, commissions which

totaled more than $100 million, including $60 million related to the Palm Beach Funds and $48 million related to the Arrowhead Funds.

The government has never alleged that Vennes was aware of the full extent of the Petters Ponzi scheme – i.e., that the purported transactions between PCI and the Big Box Retailers were wholly fictitious.  In this way, his conduct in this case is different from that of Tom Petters, Bob White and Deanna Coleman, who created a massive empire of forged documents and overt lies.  However, without the fraud perpetrated by Vennes, as well as Fry, Prevost and Harrold, Petters's Ponzi scheme could not have escalated to the size that it did nor could it have endured as long as it did.  The lies to the Arrowhead and Palm Beach investors gave the false sense that there were real deals underlying the PCI transactions (by falsely representing that retailers like Sam's Club were in fact paying the Funds) and later concealed payment problems that would have signaled to investors that the Ponzi scheme was unraveling.  The fraud perpetrated by Vennes and Fry was a subtler and more sophisticated fraud than the blunt lies of Petters, White and Coleman, but it was just as essential to the success of the PCI Ponzi scheme.  Indeed, it was a fraud cloaked in the trappings of legitimacy, a fraud which utilized the unwitting participation of lawyers and accountants and the use of offering memoranda and audited financial statements, which gave layers of cover to the often ham-handed, cut-and-paste efforts of Petters, White and Coleman.  Moreover, although Vennes may not have known the full extent of the Ponzi scheme, over the years he learned many troubling details about Petters and PCI which he kept from investors.   Vennes played a critical role in one of the largest

fraud schemes in history, resulting in catastrophic losses to real people who were victims of that fraud.

Vennes has pleaded guilty and admitted to his participation in the fraud on the Arrowhead and Palm Beach investors.  Vennes testified both at his change of plea hearing and at the trial of his codefendant Jim Fry pursuant to a defense subpoena, and the Court has had an opportunity to assess Vennes's conduct in this case.  By pleading guilty to two counts with a statutory maximum of 180 months, Vennes obtained a benefit by reducing what would have otherwise been a guidelines calculation at the top of the chart.  It is the position of the United States that, in light of the scope and magnitude of the fraud and Vennes's conduct in this case, no further reduction in his sentence is warranted.

Dated:  August 15, 2013

Respectfully submitted,

B. TODD JONES
UNITED STATES ATTORNEY

s/ *Timothy C. Rank*

BY:  TIMOTHY C. RANK
Assistant U.S. Attorney

KIMBERLY A. SVENDSEN
Assistant U.S. Attorney

ROBERT M. LEWIS
Assistant U.S. Attorney